**Michael TORRES, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 01–06–00793–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

June 28, 2007.

Deborah Summers, Deborah D. Summers, P.C., Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney—Harris County, Lori Deangelo Fix, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and HIGLEY.

## OPINION

SHERRY RADACK, Chief Justice.

After a bench trial, appellant was convicted of possession with intent to deliver cocaine weighing at least 400 grams. The trial court assessed punishment at 60 years' confinement and a $100,000 fine. The trial court also made an affirmative finding on a deadly weapon allegation. In his sole issue on appeal, appellant contends the evidence is legally and factually insuffi-

cient to support the deadly weapon finding. Appellant asks that we remand for a new punishment hearing or, alternatively, delete the deadly weapon finding. We reform the judgment to delete the deadly weapon finding, and, as reformed, affirm.

## BACKGROUND

J. Garza, an undercover officer with the Houston Police Department, met with Rodolfo Aguilar and the two began negotiating the purchase of five kilograms of cocaine. On May 23, Garza called Aguilar and they agreed to meet at a restaurant in Houston. Garza went to the location with R. Rodriguez, another undercover officer. Aguilar arrived, accompanied by appellant. Aguilar wanted $16,000 per kilogram of cocaine, and Garza countered with $15,500. Aguilar looked towards appellant for affirmation that $15,500 was an acceptable price.

Garza told appellant and Aguilar that he would let them know where to bring the cocaine once they had it in their possession, and they agreed. Aguilar and appellant left the restaurant, and surveillance officers followed them to a nearby apartment complex.

Aguilar called 10–15 minutes later and told Garza to meet him in the parking lot of a grocery store. Garza and Rodriguez arrived at the parking lot first and waited. When Aguilar and appellant arrived, Garza walked up to their car and got inside. Once he found out that Aguilar and appellant did not have the cocaine, Garza asked them what was the problem. Appellant, who was driving, said that the man who had the cocaine did not want to leave his apartment with it. Garza told appellant that he did not want to go to the apartment, and the two men argued about it for a short while. Garza finally agreed to go to the apartment complex, but still refused to go inside the apartment. Appellant agreed that he would bring the cocaine to Garza in the parking lot of the apartment complex.

Garza and Rodriguez followed appellant and Aguilar to an apartment complex. When they arrived, appellant got out, approached Garza, and said, "Okay, let's go to the apartment." Garza again tried to convince appellant to go inside, get the cocaine, and bring it out. Appellant, however, refused, stating that the man who owned the cocaine would not leave the apartment. Reluctantly, Garza agreed to go into the apartment with appellant. Rodriguez and Aguilar remained behind in the parking lots.

When he entered the apartment, Garza immediately noticed that there were three other people inside, not just one, as appellant had told him there would be. Garza was concerned because he was outnumbered four to one. Appellant entered the apartment and sat down near the door. At that point, a fifth man, Angel Barajas, came out of the bedroom of the apartment. Garza asked who was in charge, and Barajas responded that he was.

Garza followed Barajas into the back bedroom where he saw four kilogram-sized packages of cocaine on the mattress. Next to the cocaine was a box of .22 caliber bullets. Garza believed that the bullets were placed next to the cocaine to warn Garza that the men were armed. Garza told Barajas that he needed to examine the cocaine, so Barajas went to the kitchen and returned with a butcher's knife, which he handed to Garza. Barajas used the knife to open one of the packages. Garza, in an effort to get the knife away from Barajas, offered to hold the knife while Barajas peeled back the plastic wrap on the cocaine. Garza looked at the cocaine, said that it looked okay, and threw the knife to the far side of the bed.

Garza told Barajas that he would be back in an hour with the money, and he left the apartment, accompanied by appellant. As he was leaving, appellant asked Garza if he liked the product and if everything was okay. Garza told appellant that he liked it and would return in an hour.

When Garza got back in the car with Rodriguez, he called his supervisor and reported that he had seen four kilograms of cocaine in the apartment. He also gave a description of the suspects and the car that appellant and Aguilar were driving. The surveillance officers had a patrol unit stop appellant and Aguilar. Police also arrested Barajas, the owner of the apartment in which the cocaine was discovered.

When the officers entered the apartment, they found the four kilograms of cocaine on top of the bed. The box of ammunition was no longer on the bed, but was discovered in the closet. Two handguns were recovered from the house. A .40 caliber handgun was found under the cushion of a chair in the front room of the apartment, and another gun, with a silencer, was found in a paper bag on the counter in the kitchen. The officer who recovered the gun from the bag on the counter testified that it was pointed in such a way that someone standing in the kitchen would have had easy access to it, and it was pointed in the direction where Garza was participating in the drug transaction.

At trial, Garza testified that he learned from his experience working undercover narcotics, that weapons were used "all the time" to protect the drugs, the money, and the dealers themselves from both the police and other people trying to rob the drug dealers. Garza said that he did not see any weapons while he was in the apartment and had not discussed weapons with appellant. Garza was not surprised to learn that weapons were recovered from the apartment. However, Garza never saw appellant near the place where either of the weapons was located.

## DEADLY WEAPON FINDING

In his sole issue on appeal, appellant argues that the evidence is legally and factually insufficient to support the deadly weapon finding.

### A. Standard of Review

In reviewing a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim. App.2000); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000).

### B. Law and Analysis

The State argued that appellant was guilty, as a party, of the offense of possession with intent to deliver. Likewise, the State argued that appellant was guilty, as a party, of using or exhibiting a deadly weapon during the commission of the offense.[1] The evidence also showed

---

1. During closing statements, the prosecutor argued:

And in response, Your Honor, as far as the possession with intent to deliver charge, it's clear that he is a party to the possession with intent to deliver.... It is absolutely reasonable for him to be charged and convicted with the enhancement paragraph because he is involved in the conspiracy with these co-defendants that—and unnamed co- defendants, too—who are protecting the dope ... He is a clear party to the crime and a clear party to the weapons themselves. The weapons are being utilized by the group in an effort to get Garza there and to protect the dope, and we would ask that you have an affirmative finding of the gun on the charge of possession with intent to deliver.

that appellant was guilty, as a party, to Barajas's possession of the cocaine with intent to deliver.[2] Regarding a party's liability for the use of a deadly weapon by another, the Texas Code of Criminal Procedure provides as follows:

(a) The provisions of Section 3 of this article do not apply to:

(2) a defendant when it shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon *or was a party to the offense and knew that a deadly weapon would be used or exhibited.* On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court. On an affirmative finding that the deadly weapon was a firearm, the court shall enter that finding in its judgment.

TEX.CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (Vernon 2006) (emphasis added). Evidence that appellant personally used or exhibited a deadly weapon is not necessarily required when the appellant is a party. *Sarmiento v. State*, 93 S.W.3d 566, 569 (Tex.App.-Houston [14th Dist.] 2002, pet.

ref'd). When the appellant is a party, evidence that appellant knew a deadly weapon would be used or exhibited is sufficient to support a deadly weapon finding. *Johnson v. State*, 6 S.W.3d 709, 713 (Tex. App.-Houston [1st Dist.] 1999, pet. ref'd).

Appellant concedes that he was a party to the offense of possession with intent to deliver. Similarly, he does not argue that his co-defendants did not use or exhibit a deadly weapon. Appellant, however, contends that there is legally and factually insufficient evidence to support the trial court's finding that he knew a deadly weapon would be used in the commission of the offense. We agree.

There is nothing in the record to show that appellant was aware that a deadly weapon would be used in the commission of the offense. Appellant never mentioned weapons; he did not own the apartment in which the weapons were discovered; and appellant was never in the proximity of the weapons. He sat near the door, and the guns were discovered in a bag on the kitchen counter and in the cushions of a chair that was not near appellant. The ammunition was seen on the bed in the same room with the cocaine. However, appellant was never in that room. The guns were not visible to anyone entering

---

**2.** To establish unlawful possession of a controlled substance, the State must prove that the defendant exercised care, control, or management over the contraband, and that he knew that what he possessed was contraband. *Humason v. State*, 728 S.W.2d 363, 364 (Tex. Crim.App.1987), *overruled on other grounds*, *Geesa v. State*, 820 S.W.2d 154, 157 (Tex. Crim.App.1991); *Hurtado v. State*, 881 S.W.2d 738, 743 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). To prove that a defendant is criminally responsible as a party, the State must prove that he acted with the intent to promote or assist the offense by soliciting, encouraging, directing, aiding, or attempting to aid the other person in the commission of the offense. TEX. PEN.CODE ANN. § 7.02(a)(2) (Vernon 1994). To prove that appellant is

guilty of possession, as a party, the evidence must first show that another person possessed the contraband. *See Segura v. State*, 850 S.W.2d 681, 685 (Tex.App.-Corpus Christi 1993, no pet.). Then the State must show that, with the intent that the offense be committed, appellant solicited, encouraged, directed, aided, or attempted to aid the other's possession. *Id.* The record in this case showed that Barajas possessed the cocaine that was found in his apartment, and that appellant encouraged, directed, aided, or attempted to aid Barajas's possession with intent to deliver by negotiating the sale of the cocaine and accompanying the prospective buyer, Garza, to Barajas's apartment to inspect the cocaine.

the apartment, including appellant. Although Garza testified that guns are commonly used to protect drug dealers and their merchandise, there is nothing in the record to show that appellant knew that guns were present in the apartment in this case.

The State cites *Smith v. State*, 176 S.W.3d 907, 919–20 (Tex.App.-Dallas 2005, pet. ref'd), *Coleman v. State*, 145 S.W.3d 649, 653–55 (Tex.Crim.App.2004), and *Gale v. State*, 998 S.W.2d 221, 225–26 (Tex. Crim.App.1999), for the proposition that guns discovered in a home after a drug raid were "used or exhibited" during the offense because they were there to protect the drugs. We agree that any employment of a deadly weapon, even its simple possession, constitutes a "use" if such possession facilitates the associated felony. *Patterson v. State*, 769 S.W.2d 938, 941 (Tex.Crim.App.1989). The cases cited by the State all involve the question of whether the defendant himself "used or exhibited" a deadly weapon. In each of these cases, the guns, which were discovered near the drugs, were recovered either from the defendant's own house, *see Coleman*, 145 S.W.3d at 654 and *Gale*, 998 S.W.2d at 223, or were in plain view in the same room where the defendant was seen packaging the drugs, *see Smith*, 176 S.W.3d at 919–20.

However, the cases do not discuss whether a person convicted as a party to the possession offense knew that a weapon would be "used or exhibited" during the commission of the offense. The correct focus in this case is not on whether the guns were "used or exhibited" to facilitate the offense, but whether appellant *knew* that the guns would be used or exhibited by his co-defendants to facilitate the offense.

In *Johnson v. State*, the defendant, who served as the get-away driver in two robberies, argued that there was insufficient evidence to show that a firearm would be used or exhibited in the commission of the offenses. This Court disagreed, noting that the evidence showed a "thoroughly planned robbery scheme," and that appellant participated in the scheme by scouting the stores beforehand and driving the getaway car afterward. 6 S.W.3d at 713. The Court found it particularly important that when appellant and her co-defendant were arrested in her car, one of the co-defendants had a gun, strapped to his chest, that matched the description of the firearm used in the robberies. *Id.* From this evidence, the Court found it reasonable to conclude that the appellant was aware that a deadly weapon would be used to commit the robberies. *Id.*

In this case, although the evidence showed that appellant participated fully in the agreement with his co-defendants to set up the sale of the cocaine, there is no evidence that he knew that his co-defendants had weapons in the apartment. Whereas Johnson's co-defendant had a weapon strapped to his chest, appellant's co-defendants had hidden their weapons under a chair cushion and in a paper bag. Appellant was not near the weapons, never discussed the weapons, was never in the room with the ammunition and cocaine, and did not own the apartment or the weapons. Indeed, there was no evidence that appellant had ever been inside the apartment before he took appellant there.

Because there is no evidence that appellant knew that a deadly weapon would be used to commit the offense, the trial court erred by making the deadly weapon finding. Because we sustain appellant's legal sufficiency argument, we need not address his factual sufficiency claim and decline to do so.

## CONCLUSION

Having found the evidence legally insufficient to prove appellant knew that a deadly weapon would be used or exhibited, we reform the trial court's judgment to delete the deadly weapon finding.

We affirm the judgment of the trial court as reformed.