ACCEPTED
01-14-00963-cr
FIRST COURT OF APPEALS
HOUSTON, TEXAS
6/22/2015 7:47:15 AM
CHRISTOPHER PRINE
CLERK

**No. 01-14-00963-CR**

In the
**Court of Appeals**
For the
**First District of Texas**
At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

6/22/2015 7:47:15 AM

CHRISTOPHER A. PRINE
Clerk

————————◆————————

**No. 2396287**
In the 232nd District Court
Of Harris County, Texas

————————◆————————

**COURTNEY TYRON BRYANT**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

————————◆————————

STATE'S APPELLATE BRIEF

————————◆————————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**ALEXIS MITCHELL**
Assistant District Attorney
Harris County, Texas

**KIMBERLY APERAUCH STELTER**
Assistant District Attorney
1201 Franklin, Suite 600
Houston, Texas 77002
Telephone: 713.755.5826
stelter_kimberly@dao.hctx.net
State Bar Number: 19141400

ORAL ARGUMENT NOT REQUESTED

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 9.4(g) and Texas Rule of Appellate Procedure 39.1, the State requests oral argument only if appellant requests oral argument.

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

*Counsel for the State:*

**Devon Anderson** — District Attorney of Harris County

**Kimberly Stelter** — Assistant District Attorney on appeal

**Joshua Phanco** — Assistant District Attorney at trial

*Appellant or criminal defendant:*

**Courtney Tyrone Bryant**

*Counsel for Appellant:*

**Joseph W. Varela** — Defense Counsel on appeal

**Todd Overstreet** — Defense Counsel at trial

*Trial Judge:*

**Honorable Lee Duggan** — Judge Presiding

i

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ........................................................i

IDENTIFICATION OF THE PARTIES.................................................................i

TABLE OF CONTENTS .................................................................... ii

INDEX OF AUTHORITIES ..........................................................................iv

STATEMENT OF THE CASE..........................................................................1

STATEMENT OF FACTS...............................................................................1

SUMMARY OF THE ARGUMENT......................................................................5

REPLY TO APPELLANT'S FIRST POINT OF ERROR....................................................6

**The evidence was sufficient to corroborate Trejo's testimony as required under Tex. Code Crim. Proc. 38.141.**

REPLY TO APPELLANT'S SECOND POINT OF ERROR........................................11

**The failure to give a jury instruction on the necessity of corroboration of Trejo's testimony was not egregious error, as there was more than sufficient corroboration.**

REPLY TO APPELLANT'S THIRD POINT OF ERROR............................................14

**The trial court correctly charged the jury that mere presence at the scene of the offense does not establish guilt as a party to the offense. The additional language requested by appellant was an incorrect statement of law and did not fit the facts of the case.**

REPLY TO APPELLANT'S FOURTH POINT OF ERROR .........................................18

**The trial court did not err in denying appellant's motion for new trial, since appellant was not entitled to the requested instruction on which he bases his right to a new trial.**

REPLY TO APPELLANT'S FIFTH POINT OF ERROR ...........................................20

**The trial court did not err in denying appellant's motion for new trial, since appellant was not entitled to the requested instruction on which he bases his right to a new trial.**

REPLY TO APPELLANT'S SIXTH POINT OF ERROR ...........................................23

**The evidence was sufficient for the trial court, at the trier of fact at punishment, to make an affirmative finding of use of a deadly weapon.**

PRAYER ......................................................................................................27

CERTIFICATE OF SERVICE .............................................................................28

CERTIFICATE OF COMPLIANCE.......................................................................29

# INDEX OF AUTHORITIES

## CASES

*Allen v. State,*
   253 S.W.3d 260 (Tex. Crim. App. 2008) ................................................................. 11

*Almanza v. State,*
   686 S.W.2d 157(Tex. Crim. App. 1984) ............................................................ 11, 15

*Arline v. State,*
   721 S.W.2d 348 (Tex. Crim. App. 1986) ................................................................. 15

*Barrios v. State,*
   283 S.W.3d 348 (Tex. Crim. App. 2009) ................................................................. 11

*Casanova v. State,*
   383 S.W.3d 530 (Tex. Crim. App. 2012) ............................................................. 12, 14

*Castillo v. State,*
   221 S.W.3d 689 (Tex. Crim. App. 2007) ................................................................... 7

*Charles v. State,*
   146 S.W.3d 204 (Tex. Crim. App. 2004) ................................................................. 18

*Contreras v. State,*
   2012 WL 3737714, at *3 (Tex. App.
   –Fort Worth 2012, no pet.)( not reported) ............................................................. 21

*Crawford v. Washington,*
   541 U.S. 36, 51 (2004) ................................................................................ 21, 22

*De La Paz v. State,*
   273 S.W.3d 671 (Tex. Crim. App. 2008) ............................................................. 21, 22

*Delgado v. State,*
   235 S.W.3d 244 (Tex. Crim. App. 2007) ................................................................. 15

*Dowthitt v. State,*
   931 S.W.2d 244 (Tex. Crim. App. 1996) ................................................................... 7

*Drichas v. State,*
   175 S.W.3d 795 (Tex. Crim. App. 2005) ................................................................. 25

*Howell v. State,*
   175 S.W.3d 786 (Tex. Crim. App. 2005) ................................................................. 19

*Jackson v. Virginia,*
   443 U.S. 307(1979) ...................................................................................... 25

*Johnson v. State,*
   6 S.W.3d 709 (Tex.App.
   -Houston [1st Dist.] 1999, pet. ref'd)................................................................24, 25, 26

*Lopez v. State*,
   428 S.W.3d 271 (Tex. App.
   –Houston [1st Dist] 2014, pet. ref'd)................................................................19

*Malone v. State,*
   253 S.W.3d 253 (Tex. Crim. App. 2008)................................................................7

*Morrison v. State,*
   608 S.W.2d 233 (Tex. Crim. App. [Panel Op.] 1980)................................................17

*Ngo v. State,*
   175 S.W.3d 738 (Tex. Crim. App. 2005)................................................................11

*Padilla v. State*,
   2015 WL 457464 (Tex. App. –
   Houston [1st Dist.], Feb. 3, 2015, pet. ref'd)................................................14

*Pena v. State,*
   251 S.W.3d 601 (Tex. App.—
   Houston [1st Dist.] 2007, pet. ref'd)................................................................10, 13

*Randall v. State*,
   218 S.W.3d 884 (Tex. App.
   –Houston [1st Dist.] 2007, pet. ref'd)................................................................7

*Reeves v. State,*
   420 S.W.3d 812 (Tex. Crim. App. 2013)................................................................12

*Riley v. State,*
   378 S.W.3d 453 (Tex. Crim. App. 2012)................................................................19

*Sanchez v. State,*
   209 S.W.3d 117 (Tex.  Crim. App. 2006)................................................................12

*Sanchez v. State,*
   354 S.W.3d 476 (Tex. Crim. App. 2011)................................................................22

*Scott v. State,*
   946 S.W.2d 166 (Tex. App. –
   Austin 1997, pet. ref'd)................................................................16

*State v. Herndon,*
   215 S.W.3d 901(Tex. Crim. App. 2007)................................................................19

*Stephenson v. State*,
   2011 WL 4027721, at (Tex. App.
   —Amarillo 2011, no pet.) (not reported)................................................................22

*Sturdivant v. State*,
  445 S.W.3d 338 (Tex. App.
  –Houston [1st Dist.] 2013), *rev'd on other grounds,* 411 S.W.3d 487 (Tex. Crim.
  App.) ................................................................................................................ 14

*Torres v. State,*
  137 S.W.3d 191(Tex. App.
  –Houston [1st Dist.] 2004, no pet.)............................................................................ 7

*Torres v. State,*233 S.W.3d 26 (Tex. App.
  —Houston [1st Dist.] 2007, no pet.)................................................................ 24, 26

*United States v. Brown,*
  441 F.3d 1330, 1358–59 (11th Cir.2006) ............................................................ 21

*Wooden v. State*,
  101 S.W.3d 542 (Tex. App. –
  Fort Worth, 2003 pet. ref'd) ................................................................................ 16

*Woods v. State,*
  152 S.W.3d 105 (Tex. Crim. App. 2004) ............................................................ 23

*Woods v. State*,
  998 S.W.2d 633 (Tex. App.
  –Houston [1st Dist.] 1999, pet. ref'd) ................................................................. 8

*Young v. State*,
  183 S.W.3d 699 (Tex. App.
  —Beaumont 2006, pet. ref'd) ............................................................................. 10

**STATUTES**

TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007) ........................................................ 15

TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006) ........................................................ 15

TEX. CODE CRIM. PROC. ANN. Art. 38.141(a) (West 2005). .................................................. 7

TEX. PENAL CODE ANN. § 7.02(a)(2) (West2005) ............................................................... 8

**RULES**

TEX. R. APP. P. 38.2(a)(1)(A) ................................................................................................. i

TEX. R. APP. P. 39.1 ............................................................................................................... i

TEX. R. APP. P. 9.4(g) ............................................................................................................ i

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

The State charged appellant by indictment with the felony offense of possession of over 400 grams of cocaine with the intent to deliver (CR-11).[1] After a trial, the jury found appellant guilty of the offense as charged (CR-129). The judge then assessed punishment at 45 years in the institutional division of the Texas Department of Criminal Justice (CR-129). Appellant filed notice of appeal, and the trial court certified his right to appeal (CR-138, 140).



## STATEMENT OF FACTS

On the morning of July 30, 2013, Officer Esquibel and his squad were set up at a Houston apartment complex to conduct surveillance and hopefully effect an arrest for a drug deal involving multiple kilos of cocaine (RR3-27, 28). Esquibel had learned of this transaction through Eloy Trejo, a confidential informant who was acting as a middleman between the buyer, Jahson "J-Money" Hicks and the Seller, a Hispanic male known only as "Fili." (RR3-26,

---

[1] CR refers to the Clerk's Record, and the number following refers to the page in the Clerk's Record. RR refers to the Reporter's Record. The number following RR is the volume number, and the number following the dash is the page within that volume.

31). At 9:55 am, Trejo arrived at the apartment complex, followed by a black Jeep Liberty, driven by Hicks (RR3-40). Appellant was in the front passenger seat (RR3-40, 43, 46). Both appellant and Hicks exited the Jeep and followed Trejo into the apartment, where Fili and another Hispanic male were waiting (RR3-40, 43).

Fili and the Hispanic male left the apartment at 10:03am and drove to a nearby Wendy's (RR3-46-114, 155). They came back a short time later, followed by two other vehicles (RR3-46). Three individuals got out of those vehicles, including one carrying a dark-colored bag, and followed Fili and the other Hispanic male into the apartment (RR3-48, 117-118).

The sellers, Fili and his companions, had brought back two kilos of cocaine for appellant and Hicks to inspect (RR3-118-119). Someone used a knife to cut an "X" into one of the kilos, and appellant extracted a sample (RR3-120). Appellant asked for a jar and baking soda to use in testing the cocaine (RR3-120). Appellant didn't like the baking soda provided, so Trejo was sent to the store to buy some more (RR3-121). He also picked up some scales, leaving the apartment at 11:01am and returning at 11:09am (RR3-49, 122).

Appellant was cooking the cocaine in the microwave when Trejo returned, but the glass container he was using exploded (RR3-123). Trejo was

2

sent out again to buy a baby food jar to use for completing the test (RR3-124). Trejo left at 11:16am for that mission and returned at 11:31am (RR3-49). Appellant finished his testing, and told Hicks that the cocaine was "good" (RR3-126).

Unbeknownst to Trejo or the sellers, appellant and Hicks had been exchanging texts about stealing the cocaine. At 10:36 am, after the cocaine had arrived but before Trejo left on his first errand, Hicks texted appellant with the question "U want me too take this shitt??? [sic]" [2] (RR4-64). Appellant texted back at 10:37am "Yes we would" (RR4-64). At 11:17am, when Trejo was on his second errand, Hicks again texted appellant "Wht u want me to do??" (RR4-67, State's Exhibit No. 34). Appellant did not text back, but after the appellant finished his test and determined the product was good, Hicks grabbed the two kilos of cocaine, pulled out a gun, and told the sellers to "get the fuck back." (RR3-126). Appellant looked surprised and asked Hicks "what the fuck are you doing?" Nonetheless, appellant pushed Hicks out the door with the gun and the cocaine, and the two broke into a run towards the Jeep (RR3-126).

---

[2] The spelling of these texts comes from the State's Exhibit No. 33 and 34, which are printed out downloads of texts made from each phone.

Appellant got in the driver's seat of the Jeep while Hicks, carrying a brown bag containing the two kilos of cocaine, got in the passenger side (RR3-50). They pulled out of the parking lot at a high rate of speed (RR3-50). Appellant was driving fast, weaving in and out of traffic, and ran a red light (RR3-52). After getting a fair distance away from the apartment complex, appellant slowed down and started going the speed limit (RR3-52).

When signaled by a marked police car to pull over, appellant drove to a turnaround and slowed down as though he were going to stop (RR3-55). Instead, he sped up and went further down the feeder road before finally coming to a stop near a wooded area (RR3-203). This allowed Hicks to jump out of the Jeep and escape into the woods, taking the cocaine with him (RR3-55-56). Appellant sped up again and went a short distance before finally coming to a stop (RR3-203). In the arresting officer's experience, this happens when a driver is trying to give the person that runs time to get away because they know that the police are going to stay with the car instead of the runner until the vehicle is stopped (RR3-208). The tactics worked; Hicks did actually escape capture, although the police recovered the bag containing the two kilos of cocaine and Hicks' cell phone in the woods (RR3-57, 208, 214).

Appellant was arrested and his phone was also seized (RR4-12). Records obtained from appellant's and Hicks' phones established not only the

4

texts between appellant and Hicks while they were in the apartment with Trejo, but also that there had been a number of calls between the two in the days prior to the offense and one made just shortly before appellant and Hicks entered the apartment (RR4-78-80). In addition, the two texts from Hicks to appellant which had been sent while they were in the apartment had been deleted from appellant's phone (RR4-82).[3] These were the only two texts out of dozens received by appellant in the last two weeks which had been deleted (RR4-82, State's Exhibit No. 34).

———◆———

## SUMMARY OF THE ARGUMENT

First, the evidence was sufficient to corroborate Trejo's testimony as required under Tex. Code Crim. Proc. art. 38.141. Second, the failure to give a jury instruction on the necessity of corroboration of Trejo's testimony was not egregious error, as there was more than sufficient corroboration introduced at trial. Third, the trial court correctly charged the jury that mere presence at the scene of the offense does not establish guilt as a party to the offense. The additional language requested by appellant was an incorrect statement of the

---

[3] The technicians from the District Attorney's office were able to recover the messages despite their being deleted. (RR4-82).

law and did not fit the facts of the case. Fourth, the trial court did not err in denying appellant's motion for new trial, since appellant was not entitled to the requested instruction on which appellant bases his right to a new trial. Fifth, the admission of text messages from Jahson Hicks' phone did not violate appellant's Sixth Amendment rights under the Confrontation Clause, as the messages were not testimonial in nature. Finally, the evidence was sufficient for the trial court, as the trier of fact at punishment, to make an affirmative finding that appellant used a deadly weapon in the commission of this offense.

———————◆———————

## REPLY TO APPELLANT'S FIRST POINT OF ERROR

**The evidence was sufficient to corroborate Trejo's testimony as required under Tex. Code Crim. Proc. 38.141.**

In his first point of error, appellant contends that there was insufficient evidence to corroborate Trejo's testimony, as required by TEX. CODE CRIM. PROC. 38.141.

Article 38.141 of the Code of Criminal Procedure provides:

> A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated

6

by other evidence tending to connect the defendant with the offense committed.

TEX. CODE CRIM. PROC. ANN. Art. 38.141(a) (West 2005).

The covert-witness[4] corroboration requirement is similar to the corroboration required of an accomplice-witness under Art. 38.14 of the Code of Criminal Procedure, and the same standard of review applies for both. *Malone v. State,* 253 S.W.3d 253, 257–58 (Tex. Crim. App. 2008); *Torres v. State,* 137 S.W.3d 191, 196 (Tex. App. –Houston [1st Dist.] 2004, no pet.)

To measure the sufficiency of the corroborating evidence, the reviewing court must eliminate the covert-witness testimony from the record and determine whether the remaining inculpatory evidence tends to connect the defendant to the offense. *Id.* at 257. The "tends to connect" standard is not a high threshold*. Randall v. State*, 218 S.W.3d 884, 886 (Tex. App. –Houston [1st Dist.] 2007, pet. ref'd). The corroborating evidence need not directly link the accused to the offense. *Castillo v. State,* 221 S.W.3d 689, 691 (Tex. Crim. App. 2007); *Dowthitt v. State,* 931 S.W.2d 244, 249 (Tex. Crim. App. 1996)

Circumstances that appear insignificant may constitute sufficient evidence of corroboration. *Malone,* 253 S.W.3d at 253, 257. Though "mere

---

[4] Caselaw refers to these individuals as either "confidential informants or "covert-witnesses."  The State prefers the latter term, since the issue comes up only if the individual testifies, and the statute uses the term "acting covertly."

7

presence" is insufficient corroboration, evidence that the defendant was at or near the scene when or about when it was committed may sufficiently tend to connect the defendant to the crime, provided the evidence is "coupled with other suspicious circumstances." *Id.* at 257

The evidence and the State's theory of the case established that appellant was guilty as a party of possessing over 400 grams of cocaine with the intent to deliver. To prove that a defendant is criminally responsible for possession of a controlled substance as a party, the evidence must first show that another person possessed the contraband. *Woods v. State*, 998 S.W.2d 633, 636 (Tex. App. –Houston [1ˢᵗ Dist.] 1999, pet. ref'd). The State must then show that, with the intent to promote or assist the commission of the offense, the defendant solicited, encouraged, directed, aided, or attempted to aid the other's possession. TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2005); *Woods*, 998 S.W.2d at 636.

Removing Eloy Trejo's testimony from consideration, there is ample evidence from police surveillance and phone records which "tends to connect" appellant to possessing the cocaine as a party.

1. Police observed appellant and Hicks arrive together in a black Jeep Liberty, having followed Trejo's car over to the apartment complex. The three then entered an apartment that the police had under surveillance as the location for the drug deal (RR3-42).

8

2. Fili and another male left and returned with several other people in two more cars. Three men got out and one carried a dark gym-size bag into the apartment (RR3-48).

3. Phone records established that after Fili returned, Hicks texted appellant with the question "U want me too take this shitt???" Appellant texted back a minute later "Yes we would" (RR4-64).[5] Later, Hicks texted appellant "Wht u want me to do??" (RR4-67, State's Exhibit No. 34).

4. Police observed appellant and Hicks run out of the apartment and sprint to the Jeep. Hicks was carrying a brown bag with him. Appellant got in the driver's side and sped away. He was seen weaving in and out of traffic, and ran a red light in an apparent attempt to avoid being followed (RR3-50, 52, RR4-170).

5. After getting far enough away from the apartment complex, appellant slowed down and started going the speed limit (RR3-52).

6. When appellant was signaled to pull over by police, he took evasive measures before stopping next to a wooded area, which allowed Hicks to jump out of the car and escape into the woods, carrying the brown bag with him (RR3-55-56).

7. Hicks escaped but police were able to recover the bag he was carrying, which contained two kilos of cocaine (RR3-208).

8. Phone records established that there had been several phone calls between appellant's phone and Hick's phone in the days prior to the offense and one made just shortly before appellant and Hicks entered the apartment (RR4-78-80).

---

[5] While the answer seems strangely worded, the witness testified that on a phone keyboard, "w" and "s" are right next to each other, indicating that appellant probably meant to text "yes we should" instead of "yes we would." (RR4-65). This makes sense given the context, but whether it was appellant's intent to text "would" or "should," the operative word here is "**yes**," indicating that appellant gave the go-ahead for Hicks to take the cocaine. Also, the other texts show that the parties were not fastidious users of the English language.

9. The two messages from Hicks to appellant were deleted from appellant's phone sometime between being sent in the apartment and appellant's roadside arrest. These were the only two incoming texts which were deleted (RR4-82, State's Exhibit No. 34).

In short, everything observed by police and every action taken by appellant indicated that appellant was a party to the possession of this cocaine. Appellant came with Hicks to the drug deal, gave the order for Hicks to take the drugs, ran with him out of the apartment and to the Jeep, and drove away in such a manner that he made sure they escaped with the contraband. When required to stop by police he again did so in such a way and at such a location that Hicks was able to escape into the woods with the cocaine. His guilt was only emphasized by the fact that he carefully deleted the texts he had received from Hicks and no others. These facts are more than sufficient to "tend to connect" appellant to possession of the cocaine. *Pena v. State,* 251 S.W.3d 601, 606 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Young v. State*, 183 S.W.3d 699, 702 (Tex. App.—Beaumont 2006, pet. ref'd).

Appellant's first point of error is without merit, and should be overruled.

———————◆———————

**The failure to give a jury instruction on the necessity of corroboration of Trejo's testimony was not egregious error, as there was more than sufficient corroboration.**

Appellant contends in his second point of error that the trial court erred in failing to give the jury an instruction regarding the need for corroboration of Trejo's testimony, pursuant to Texas Code of Criminal Procedure Art. 38.141. Appellant acknowledges that he did not request such instruction, and the trial court did not sua sponte include such instruction in the jury charge.

Under *Almanza,* the degree of harm required for reversal depends on whether the error was preserved in the trial court. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); *Ngo v. State,* 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). When a defendant does not raise a timely objection to the jury instruction, reversal is required only if the error was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial. *See Almanza,* 686 S.W.2d at 171; *Barrios v. State,* 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *See id.*; *Allen v. State,* 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). Egregious harm is a "high

and difficult standard" to meet, and such a determination must be "borne out by the trial record." *Reeves v. State,* 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

Whether error in failing to submit a covert-witness instruction rises to the level of egregious error is a function of the strength of the corroborating evidence. *Casanova v. State*, 383 S.W.3d 530, 539-40 (Tex. Crim. App. 2012) (discussing egregious error analysis in context of failure to give accomplice witness standard) The strength of that evidence is, in turn, a function of (1) its reliability or believability and (2) how compellingly it tends to connect the accused to the charged offense. *Id.* Other factors to consider are (1) the entirety of the charge itself, (2) the arguments of counsel, and (3) other relevant information revealed by the record. *See Sanchez v. State,* 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

While the charge did not contain an instruction requiring corroboration of Trejo's testimony, there was plenty of corroboration to be had, as outlined in the previous point of error. Furthermore, the prosecutor emphasized that the jury did not have to rely on Trejo's version of events, but should also consider all the other evidence which corroborated Trejo's testimony. Specifically, the State stressed in closing argument that Trejo's testimony was

corroborated by messages on appellant's phone and by the observations of police.

> "If you want to say at the end of this that somehow we can't find Courtney Bryant guilty because there's a CI who told us what's going on *even though text messages back up exactly what the CI was seeing inside, even though when they come running outside they're not arguing over whose going where or do what.* They go in the same car and guess what he goes straight to the driver's seat. You don't hear a struggle about whose going to drive. He's driving 'cause he knows he's driving away (RR-145)

> [Y]ou all have to go back and look at each piece of evidence, everything Eloy said, everything that those officers saw *and see if they match up and guess what they do.* He had to leave twice. That's exactly what the officers told you. Eloy's telling you he had to leave matching up what the officers are telling you. Every time Eloy is saying I saw X marks the spot, blah blah blah dude is that -- yes. He says I remember them cutting an X into it and an X is what I – is what we saw. (RR4-153).

Coming from multiple police officers and appellant's own phone, the evidence of corroboration was credible, reliable, and abundant. Furthermore, the State did not urge the jury to convict on Trejo's testimony alone, but emphasized how all the other evidence confirmed his testimony. *Cf. Pena*, 251 S.W.3d at 611 (Holding failure to give a corroboration instruction not egregious harm even when State misstated the law and said confidential informant's testimony did not need to be corroborated.)

Viewing the record in its entirety, this Court can conclude that the evidence corroborating Trejo's testimony was not "so unconvincing in fact as

13

to render the State's overall case for conviction clearly and significantly less persuasive." *Casanova,* 383 S.W.3d at 534. Therefore, appellant did not suffer egregious harm from the absence of an instruction on corroborating the accomplice witness testimony. *Id., at 54* (finding failure to give accomplice witness corroboration instruction not egregious error); *Sturdivant v. State*, 445 S.W.3d 338, 355 (Tex. App. –Houston [1st Dist.] 2013), *rev'd on other grounds,* 411 S.W.3d 487 (Tex. Crim. App.) (same); *Padilla v. State*, 2015 WL 457464 (Tex. App. –Houston [1st Dist.], Feb. 3, 2015, pet. ref'd) (finding failure to give instruction on corroboration instruction for covert-witness not egregious error.).

———————◆———————

## REPLY TO APPELLANT'S THIRD POINT OF ERROR

**The trial court correctly charged the jury that mere presence at the scene of the offense does not establish guilt as a party to the offense. The additional language requested by appellant was an incorrect statement of law and did not fit the facts of the case.**

Appellant argues in his third point of error that the trial court erred in failing to properly charge the jury on "mere presence." In fact, the jury was given a correct charge on mere presence, and the additional language

14

requested by appellant is neither an accurate statement of the law nor correctly fits the facts of the case.

### A. Standard of Review

The purpose of the jury charge is to instruct the jury on the law that applies to the case and to guide the jury in applying the law to the facts of the case. *See Delgado v. State,* 235 S.W.3d 244, 249 (Tex. Crim. App. 2007); *see also* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007) (trial court shall give jury "a written charge distinctly setting forth the law applicable to the case"). When reviewing an error based upon the charge to the jury, courts determine whether error existed in the charge, and whether the error was calculated to injure the defendant's rights. *See Barrios v. State,* 283 S.W.3d at 350; *Arline v. State,* 721 S.W.2d 348, 351 (Tex. Crim. App. 1986); TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006). In making this determination, courts examine the charge as a whole, considering the workable relationship between the abstract paragraphs of the charge—the instructions and definitions—and those applying the abstract law to the facts. *Almanza,* 686 S.W.2d at 171.

## B. Discussion of Jury Charge

The jury charge included an instruction on mere presence or knowledge of guilty intent not being enough to establish guilt as a party.[6] Appellant's request was to add an additional component to this charge:

> "Under [Wooden v. State] which is 101 Southwest 3rd 542 Texas appellate court out of Fort Worth 2003 where petition was refused the Court quotes: "Standing alone, proof that an accused was present at the scene of the crime or assisted the primary actor in making his getaway is insufficient"
> So my proposed addition would be mere presence alone at the scene of a crime *...who are assisted or assisting a primary actor in making his getaway* will not constitute one to a party – one a party to an offense. Furthermore, knowledge of the guilty intent of the parties present will not constitute one a party to an offense." (sic passim) (italics added) (RR4-128).

The trial declined to add this additional language (RR4-119).

Defense counsel borrowed the wording for his requested charge from *Scott v. State,* 946 S.W.2d 166, 168 (Tex. App. –Austin 1997, pet. ref'd) and *Wooden v. State*, 101 S.W.3d 542, 546 (Tex. App. –Fort Worth, 2003 pet. ref'd). Both of these cases, however, used this language in discussing the sufficiency of the evidence to find a defendant guilty of aggravated robbery as a party.

---

[6] "A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Mere presence alone at the scene of a crime and knowledge of the guilty intent of the parties present will not constitute one a party to an offense*." (CR-119).

16

These were ***not*** cases involving language to be included in a jury charge, and appellant cites no caselaw in which such language has been sanctioned or given in a charge.

Furthermore, such language would be inappropriate in a possession case. In a robbery, there could be a situation where helping an individual after they've committed the robbery, such as giving that individual a ride away from the scene, would not make one a party to the offense. *Morrison v. State,* 608 S.W.2d 233, 235 (Tex. Crim. App. [Panel Op.] 1980) ("One's acts committed after the offense is completed cannot make him a party to the offense").[7] This case, however, was a possession case; the offense of possession was still continuing throughout the time appellant drove the car and during his maneuvers to let Hicks escape into the woods. Thus, throughout the time appellant and Hicks were together, even in flight, appellant could be guilty of possession of cocaine, unlike the aggravated robbery cases, where a getaway driver could conceivably not be part of the preceding crime. *Cf. Scott*, 946 S.W.2d at 170. (holding that the evidence was

---

[7] Then again, a defendant could be guilty as a party for driving the getaway car in an aggravated robbery case if "before the codefendants committed the offense of robbery, appellant entered into a conspiracy and agreed to become a party to aid in the robbery by driving the getaway car." *Scott,* 946 S.W.2d at 170. Thus, the phrasing of appellant's proposed instruction would not be correct even in an aggravated robbery case.

insufficient to find that appellant was part of the conspiracy to rob the victim before it occurred). The jury was given a correct charge on mere presence, and the additional language requested by appellant would have been improper in this case. Appellant's third point of error should be overruled.

———————◆———————

## REPLY TO APPELLANT'S FOURTH POINT OF ERROR

**The trial court did not err in denying appellant's motion for new trial, since appellant was not entitled to the requested instruction on which he bases his right to a new trial.**

Appellant filed a motion for new trial making general allegations that the judgement was "contrary to the law and the evidence, and the Court misdirected the Jury about the law and/or committed a material error that injured the Defendant's rights." (CR-132). At a hearing on this motion, defense counsel asserted as grounds for a new trial the fact that the trial court did not give the requested charge discussed in the previous point of error. The trial court denied this motion (CR-VI-6).

The standard of review for denial of a motion for new trial is abuse of discretion. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). The test for an abuse of discretion is "whether the trial court acted without reference to any guiding rules or principles." *State v. Herndon,* 215 S.W.3d 901,

906 (Tex. Crim. App. 2007) (quoting *Howell v. State,* 175 S.W.3d 786, 792 (Tex. Crim. App. 2005). The fact that an appellate court may decide a matter differently from a trial court does not demonstrate an abuse of discretion. *Herndon.,* at 907-08. Appellate courts view the evidence in the light most favorable to the trial court's ruling, defer to the court's credibility determinations, and presume that all reasonable fact findings in support of the ruling have been made. *Riley v. State,* 378 S.W.3d 453, 457 (Tex. Crim. App. 2012); *Lopez v. State*, 428 S.W.3d 271, 278 (Tex. App. –Houston [1st Dist.] 2014, pet. ref'd).

As discussed in the previous point of error, the trial court correctly refused appellant's request to supplement the "mere presence" instruction with language stating that appellant could not be found guilty as a party for "assisting the primary actor in making his getaway" since such instruction was not correct and did not fit the offense charged.

Since the requested charge was properly denied, the trial judge did not abuse her discretion in denying the motion for new trial on this basis. Appellant's fourth point of error is without merit and should be overruled.

———————◆———————

**REPLY TO APPELLANT'S FIFTH POINT OF ERROR**

**The admission of text messages from Jahson Hicks' phone did not violate appellant's Sixth Amendment rights under the confrontation clause, as the messages were not testimonial in nature.**

Appellant, in his fifth point of error, complains of the admissibility of text messages made from Jahson Hicks' phone to appellant's phone. This phone was recovered from the woods where Hicks fled. Nathan Gates, an investigator with the Harris County District Attorney's office, extracted the data from both Hicks' and appellant's cell phones and transferred it to a flash drive (State's Exhibit No. 32).[8] A printout of the text messages and call logs from the two phones was then introduced into evidence (State's Exhibit No. 33, 34). From these, the State was able to establish that during the time appellant and Hicks were in the apartment with Trejo, Hicks sent appellant texts that read "U want me too take this shitt???" and "Wht u want me to do??" (RR4-64, 67, State's Exhibit No. 34). The defense objected to the admissibly of State's Exhibit No. 32 and 33 on the grounds of "hearsay and confrontation."

---

[8] The State first obtained a search warrant for retrieval of this information. (RR4-53-54).

(RRIV-55, 63, 69). It is the Confrontation Clause objection to these two text messages from Hicks which appellant now argues on appeal. [9]

The Sixth Amendment to the United States Constitution protects an accused's right to be confronted with the witnesses against him in a criminal prosecution. *Crawford v. Washington*, 541 U.S. 36, 51 (2004). A defendant's right to confront and cross-examine witnesses against him, under the Confrontation Clause, applies only to statements which are "testimonial" in nature. *Id.,* at 68. Testimonial statements are those "that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id. See also De La Paz v. State,* 273 S.W.3d 671, 680 (Tex. Crim. App. 2008) ("Generally speaking, a hearsay statement is 'testimonial' when the surrounding circumstances objectively indicate that the primary purpose of the interview or interrogation

---

[9] Appellant does not raise any issue as to text messages sent by appellant himself, specifically his answering text to Hicks of "Yes we would" (RR4-64, State's Exhibit No.34). Presumably this is because he realizes that the Confrontation Clause is not implicated when a criminal defendant's own incriminating statements are used against him. *See United States v. Brown,* 441 F.3d 1330, 1358–59 (11th Cir.2006) (holding that admitting defendant's own statement did not violate Confrontation Clause because "a party cannot seriously claim that his or her own statement should be excluded because it was not made under oath or subject to cross-examination") *See also, Contreras v. State*, 2012 WL 3737714, at *3 (Tex. App. –Fort Worth 2012, no pet.)( not reported) (finding no Confrontation Clause violation for admitting text messages sent by defendant).

is to establish or prove past events potentially relevant to later criminal prosecution.")

The Sixth Amendment does not bar the introduction of out-of-court statements that would have been admissible in a criminal case at the time of the founding. *Ohio v. Clark*, 13-1352, 2015 WL 2473372, at *6 (U.S. June 18, 2015) (citing *Giles v. California*, 554 U.S. 353, 358–359 (2008); *Crawford*, 541 U.S., at 56, n. 6).  It also does not prohibit the admission of non-testimonial hearsay. *Sanchez v. State,* 354 S.W.3d 476, 485 (Tex. Crim. App. 2011). The Supreme Court has noted that most hearsay exceptions have historically covered "statements that by their nature were not testimonial—for example, business records or *statements in furtherance of a conspiracy*." *Crawford,* 541 U.S. at 56 (emphasis added).  Whether a statement is testimonial is a question of law. *De La Paz,* 273 S.W.3d at 680.

The text messages in this case were not testimonial in nature.  They were made by Hicks, a co-conspirator, in furtherance of a plan to steal cocaine from the sellers he and appellant were meeting with.  There is no evidence that Hicks made these statements under circumstances where an objective witness would believe that they were being made for use at trial. *See Stephenson v. State*, 2011 WL 4027721, at (Tex. App.—Amarillo 2011, no pet.) (not designated for publication) (finding text messages from defendant's

sister to friend were non-testimonial in nature). *See also Davis v. State,* 268 S.W.3d 683, 709 (Tex. App. –Fort Worth, 2008, pet. ref'd) (holding that statements made during a cell phone call conducted in the presence of a friend were not testimonial); *Woods v. State,* 152 S.W.3d 105, 114 (Tex. Crim. App. 2004) (stating that co-defendant's spontaneous statements to acquaintances were not testimonial).

Since these text messages were not testimonial in nature, the trial court ruled correctly in allowing the messages to be introduced into evidence. Appellant's Sixth Amendment right to confrontation has not been violated and his fifth point of error should be overruled.

————————◆————————

## REPLY TO APPELLANT'S SIXTH POINT OF ERROR

**The evidence was sufficient for the trial court, at the trier of fact at punishment, to make an affirmative finding of use of a deadly weapon.**

After appellant's conviction, the defense elected to have the trial court determine punishment and decide whether a deadly weapon finding should be made (CR-126, RR5-7). After argument from the State and the defense, the court announced that appellant was a party to the offense, made an

23

affirmative finding of the use of a firearm during the commission of the offense, and assessed punishment at 45 years in the Institutional Division of the Texas Department of Criminal Justice (RR5-26). It is appellant's contention that the evidence does not support the trial court's deadly weapon finding.

Tex. Code Crim. Proc. art. 42.12§ 3(g)(a)(2) provides that a "deadly weapon" finding should be entered when it is shown that a deadly weapon "was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited a deadly weapon *or was a party to the offense and knew that a deadly weapon would be used or exhibited*." (emphasis added). Evidence that a defendant personally used or exhibited a deadly weapon is not required when the defendant is guilty of an offense as a party. *Torres v. State*, 233 S.W.3d 26, 30 (Tex. App.— Houston [1st Dist.] 2007, no pet.). When the defendant is a party, evidence that he or she knew a deadly weapon would be used or exhibited is sufficient to support a deadly weapon finding. *Johnson v. State,* 6 S.W.3d 709, 713 (Tex. App. –Houston [1st Dist.] 1999, pet. ref'd). The inquiry on review of the sufficiency of the evidence to support a deadly weapon finding is the same as that used to support a criminal conviction; i.e. whether any rational trier of fact could have made a deadly weapon finding "beyond a reasonable doubt

24

after viewing the evidence in the light most favorable to the prosecution." *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005); *Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979).

Appellant contends that "there is no evidence that appellant anticipated that [Hicks] would produce a pistol and rob anybody, nor any evidence that appellant assisted [Hicks] in doing so once the action started." (appellant's brief, p. 27). This is simply incorrect. Appellant and Hicks clearly had a plan to steal the kilos of cocaine in this case. They brought no money to the transaction, Hicks texted appellant as to whether he should take the cocaine once it was delivered to the apartment, and appellant affirmatively texted him back, giving him the go ahead. Once appellant completed his testing of the cocaine and determined that it was good, Hicks carried out his plan, by displaying his gun and taking possession of the cocaine *in appellant's presence.* Appellant continued aiding in the crime by guiding Hicks, who was still holding the gun, out of the apartment and running with him to the car, where he acted as the getaway driver. [10]  *See Johnson v. State,* 6 S.W.3d at 713

---

[10] While appellant acted surprised by Hick's actions in conducting the holdup, a rational trier of fact could have determined that this was a pretense meant to lessen suspicion on himself  and throw the sellers off guard. The prior texts between appellant and Hicks and appellant's actions in quickly helping Hicks escape out of the apartment with the drugs instead of trying to stop the holdup or telling Hicks to calm down, shows his real intentions and knowledge.

(evidence sufficient for deadly weapon finding when the defendant, even though not present at the actual robbery, was guilty as a party to the offense by performing reconnaissance of location and driving getaway car); *Cf. Torres v. State*, 233 S.W.3d at 30 (evidence insufficient to support defendant's deadly weapon finding as a party when defendant was never in proximity of weapons, weapons were in apartment but were not visible to anyone entering apartment, and appellant did not own apartment and had never been there before.)

The evidence was sufficient for the trial court judge, as trier of fact on the issue of the deadly weapon finding, to make an affirmative finding that appellant knew a deadly weapon would be used or exhibited in the commission of this offense. *See Johnson*, 6 S.W.3d at 713. Appellant's sixth and final point of error is without merit and should be overruled.

———————◆———————

## PRAYER

The State respectfully requests that this Court affirm the judgment of the trial court.

**DEVON ANDERSON**
District Attorney
Harris County, Texas


/s/Kimberly Aperauch Stelter
**KIMBERLY APERAUCH STELTER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
State Bar Number:19141400
stelter_kimberly@dao.hctx.net

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing instrument is being served

by EFileTXCourts.Gov e-filer to the following email address

Joseph W. Varela
Attorney at law
Suite 247 2500 East T.C. Jester Blvd.
Houston, TX 77008
jwvarela@gmail.com

/s/Kimberly Aperauch Stelter
**KIMBERLY STELTER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
State Bar Number: 19141400
stelter_kimberly@dao.hctx.net

28

**CERTIFICATE OF COMPLIANCE**

The undersigned attorney certifies that this computer-generated document has a word count of **7,258** words, based upon the representation provided by the word processing program that was used to create the document.

/s/Kimberly Aperauch Stelter
**KIMBERLY STELTER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002-1923
(713) 755-5826
TBC No. 19141400
stelter_kimberly@dao.hctx.net

29